[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Donald C. Papcsy, was an employee of Remodeling Consultants, Inc. (hereinafter"company"), a New York corporation, in the remodeling business in New York and Connecticut. Mr. Papcsy was a supervisor of the company working in Connecticut. In 1984, he borrowed $20,000 from the company, which was evidenced by a promissory note signed by both he and his wife, Elizabeth Papcsy. As security for the loan, his wife Elizabeth, the sole owner of the family residence located at 115 Tahmore Drive, Fairfield, Connecticut, executed a mortgage deed to the company. Interest on the note was paid regularly. That CT Page 8766 note was later assigned to Remodeling Consultants, Inc. Money Purchase Plan, an employee benefit plan.
In early, 1988, Remodeling Consultants, Inc., was in need of operating capital to expand its business and offered to its employees an opportunity to participate in a loan program. The basic plan was for the employee to borrow money from the company pension plan, Remodeling Consultants, Inc. Money Purchase Plan, and then loan that money to the company. The plan contemplated that the interest due the employee from his or her loan to the company would offset the interest owed by the employee to the pension plan.
Apparently, the defendant Donald Papcsy entered into discussion with the company to borrow $50,000 from the pension funds, the proceeds of which would pay off the original $20,000 loan from the company and the balance of $30,000 he would invest in the company. This would require that he and his wife would sign a new $50,000 note and his wife would execute a new mortgage deed to secure the loan. Although Mr. Papcsy thought the proposition was a "win-win" situation for him, his wife was reluctant to obligate the family home for a loan to the company. She testified she was called by Jerome J. Zaccaria, company president and trustee of the pension plan, who threatened her that if she did not go along with the mortgage, her husband's job could be in jeopardy.
The details of the transaction now become somewhat curious, if not murky. The attorneys for the parties, Henry Lyons, III for the defendants and Peter Tomback for the plaintiffs, both testified that their first conversation about this matter occurred on February 4, 1988. That is supported by plaintiff's exhibits BB and CC, an exchange of correspondence between the attorneys setting forth the parameters of the proposed transaction. Pursuant to the attorneys' understanding and commitments, Attorney Tomback, in a letter to Attorney Lyons dated February 22, 1988 (plaintiff exhibit FF), enclosed a proposed mortgage note in the amount of $50,000 payable by the defendants to Jerome J. Zaccaria as Trustee for Remodeling Consultants, Inc. Money Purchase Pension Plan and Trust, bearing a date of February ____, 1988. The understanding was that if the note was acceptable that Mr. Lyons would prepare the proper Connecticut mortgage deed to secure the note.
On February 29, 1988, in a letter to Tomback, Attorney Lyons CT Page 8767 acknowledged receipt of the proposed note and enclosed a copy of his proposed mortgage deed. (Plaintiff's exhibit HH.) The letter further discussed the date on the note and that it and the mortgage would have to be somehow redated because it was already March. Thereafter, in another letter to Tomback dated March 18, 1988, Lyons reaffirms that the note and mortgage deed have been executed by his clients. Again, on May 4, 1988, Lyons writes Tomback (plaintiffs's exhibit LL) and enclosed the original mortgage note, copy of the mortgage deed and certificate of title. The enclosed mortgage note was dated February 1, 1988, and so acknowledged by a Notary Public, Marie E. Cocozza, who certified that the defendants executed the note before her on February 1, 1988, some four days before the attorneys first discussed that transaction and 22 days before Mr. Tomback ever sent it to Lyons. It is just as curious that the mortgage deed sought to be foreclosed in this case is also dated and acknowledged by Attorney Lyons on February 1, 1988, again many days before the document was ever prepared or the idea for its preparation was contemplated. No explanation by the parties was offered for this impossible scenario.
The note which is being sued upon, plaintiff's exhibit A, is dated and apparently executed and acknowledged on October 1, 1988, by the same notary as notarized the note dated February 1, 1988. The court early on concluded that the October 1, 1988 note and the February 1, 1988 note were in fact one and the same and the original February dates had been eradicated and the October date substituted. (See plaintiff's exhibit A-1, which was offered by plaintiff's attorney after the court's examination of Attorney Tomback which was the original of plaintiff's exhibit A which clearly shows the dates to have been whited out.)
The court questioned Attorney Tomback at length, and he initially said he prepared plaintiff's exhibit A just prior to its execution on October 1, 1988. Then he changed that story to conclude that Attorney Lyons must have changed the dates from February 1, 1988 to October 1, 1988 on the original note he prepared dated February ___ 1988. When confronted by the court with plaintiff's exhibit MM, his letter to Attorney Lyons dated October 11, 1988, and in particular its third paragraph, he admitted that he himself whited out and changed the date on the original note from February 1, 1988 to October 1, 1988 at Zaccaria's office with Donald Papczy present. Both defendants testified that they only signed one note for $50,000, which would have been executed on February 1, 1988. It is also clear that no CT Page 8768 money or other consideration was given to the defendants until at least September 29, 1988.
There is little or no evidence that the defendant Donald Papczy gave his permission to alter the dates on the original note and no evidence that Elizabeth Papczy either knew of or approved the change in the note and no evidence that she would ever have signed a new note around October 1, 1988. She had expressed a strong reluctance to do it on February 1, 1988. Reference is made to paragraph four of exhibit MM where Attorney Tomback asks Attorney Lyons to change the maturity date on the mortgage deed to conform to the changes he made in the note apparently with no regard to any consent or approval of the defendants. It is true that on September 29, 1988, the defendants received a check from Remodeling Consultants, Inc. Money Purchase Pension Plan and Trust for $50,000. To add to the confusion, the mortgage deed dated February 1, 1988, apparently to secure a mortgage note dated October 1, 1988, was not recorded until October 20, 1992.
On this sorry state of affairs, the plaintiffs, James J. Zaccaria, Sr., Trustee, Remodeling Consultants, Inc. Money Purchase Pension Plan and Trust, on November 23, 1993, instituted a one count foreclosure action to foreclose that mortgage. That complaint was met by an answer and ten special defenses on December 3, 1993. On April 8, 1996, the plaintiff filed a Request for Leave to Amend the Complaint to now add new paragraphs to show compliance with the notice requirements of the operative note and mortgage deed which had just prior to that date been sent. The objection to that request was overruled.
Again, on October 25, 1996, the plaintiff filed an additional Request to Amend the April 8, 1996 amended complaint by adding two additional counts for reformation of the February 1, 1988 mortgagee deed. The second count which alleges mutual mistake on the part of the plaintiff and the defendant as well as a scrivener's error on the part of Attorney Lyons asks that the mortgage deed be reformed in three specific ways:
1. that reference on the front page of the mortgage deed to the northerly boundary of the property be changed from"SAMP MORTGAGE LAKE" to"SAMP MORTAR LAKE";
2. that reference on the second page of the mortgage to a promissory note for Fifty Thousand ($50,000) Dollars of even CT Page 8769 date herewith payable to said grantee or order, said note having a maturity date of February 1, 1988, be changed to promissory note for Fifty Thousand ($50,000) Dollars dated October 1, 1988 payable to Jerome J. Zaccaria, Sr., Trustee, Remodeling Consultants, Inc. Money Purchase Plan and Trust or order, said Note having a maturity date of October 1, 1988; and,
3. that the grantee named in the mortgage deed on the first page, Remodeling Consultants, Inc. Money Purchase Plan, a Trust, be changed to Jerome J. Zaccharia, Sr., Trustee Remodeling Consultants, Inc. Money Purchase Plan and Trust to conform to the payee on the note.
The new third count of the complaint asks for the same changes as requested in the second count on the basis of a mistake of the plaintiff coupled with actual or constructive fraud or inequitable conduct on the part of the defendants.
This case began as a simple one count foreclosure action. Three years after its filing the plaintiff realized that it had not filed appropriate notices required by the note and mortgage deed and did so then and moved to amend its complaint to describe those notices. Shortly thereafter, also in 1996, it recognized that the mortgage deed had several problems and filed a further Request to Amend to add two additional counts to reform the mortgage deed in those specific instances. That amended complaint was answered by the defendants who then interposed 14 special defenses. If that was not enough, the problems of the plaintiff land its documents, in support of its claim, only got worse during the trial. It is significant to note that the evidence reflects that both lawyers are being sued for malpractice by one or both parties and one of the lawyers is suing the other. Those lawyers are Henry Lyons and Peter Tomback, who represented the respective parties at the time of this transaction back in 1988. This court observes that there is adequate evidence of malpractice throughout, and some of the actions of Attorney Tomback go beyond even that.
The two counts asking for reformation will be considered first. In the second count, the plaintiff claims mutual mistake and scrivener's error on the part of Attorney Lyons. In the third count, the plaintiff claims unilateral mistake on his behalf accompanied by fraud or inequitable conduct by the defendants and their lawyer. The plaintiff asks that the mortgage deed be CT Page 8770 reformed in three specific instances previously set forth in this memorandum. The court will grant that relief as far as the property description is concerned and the northerly boundary will now read"SAMP MORTAR LAKE" rather than"SAMP MORTGAGE LAKE."
As to the two other requested changes, relief by reformation is denied and judgment will enter for the defendants. Both parties have in their briefs set forth the proper criteria for reformation which the court will not repeat. Proof to support a reformation must also be clear, substantial and convincing.Greenwich Contracting Co. v. Bongitti Construction Co.,156 Conn. 123 (1964). It was never the purpose of reformation to correct all errors caused by lawyer malpractice of which there is plenty to go around. The plaintiff's real problem is that he has a mortgage deed executed and acknowledged February 1, 1988 and a note dated October 1, 1988.
The second count requires proof of mutual mistake. In this case, Attorney Tomback testified that the legal errors were caused by Attorney Lyons and he is suing him in malpractice for those errors. In addition, he first received a copy of the mortgage deed from Attorney Lyons in a letter dated February 29, 1988, and at no time thereafter, up to and including his letter to Attorney Lyons of October 11, 1988 (plaintiff's exhibit MM), did he ever request in writing that Attorney Lyons change the name of the mortgagee from Remodeling Consultants, Inc. Money Purchase Plan, a Trust to James J. Zaccaria, Sr., Trustee, Remodeling Consultants, Inc. Money Purchase Pension Plan and Trust.
On May 4, 1988, Attorney Lyons, in a letter to Attorney Tomback, enclosed a copy of the executed and acknowledged mortgage deed dated February 1, 1988, and still no claim for correction by Mr. Tomback. In his letter to Attorney Lyons of October 11, 1988, although Attorney Tomback asked that Attorney Lyons "change" two terms of the previously executed mortgage deed concerning the property description and the note date and maturity, he made no such request with reference to the name of the mortgagee. Attorney Lyons did not make the change because he did not feel it was proper to change the term of a previously executed document. Mr. Tomback apparently did not share the same reservations when he changed the dates in the note.
There is simply no mutual mistake here justifying a CT Page 8771 reformation, and the lawyers should be left to defend their actions in the pending malpractice claims. On the second count, judgment will enter for the defendants on all relief sought other than the property description.
As to the third count, the plaintiff again asks for the same reformation of the mortgage deed based on mistake on its part coupled with fraud or inequitable conduct on the part of the defendants. On this count, there is simply no evidence that Attorney Tomback was mistaken or that the defendants or their attorney was guilty of fraudulent conduct. Attorney Tomback had clear opportunity to request in writing changes in the mortgage deed as far as the name of the mortgagee and he failed to do so. For the reasons previously stated, judgment on this count shall enter for the defendants on all claims except the property description and the substitution of Samp Mortar Lake for Samp Mortgage Lake.
The court will now deal with the amended complaint and the special defenses, of which there are fourteen. The plaintiff in its memorandum attempts to sweep under the table the problems with its papers caused by the activity of its then lawyer, Attorney Tomback. Those problems cannot be washed away. On page two, the plaintiff states that the documents prepared by their attorneys "were supposed to include both a valid mortgage note and a valid mortgage deed." Unfortunately they do not. On page three, the plaintiff claims that the mortgage note was revised with the consent of the defendants, which is simply not the case. As far as the claim that the defendants paid interest on the note for two and one-half years, those payments were taken out of his salary or bonus by the company and were not directly paid.
To understand this case, the court must get to the basics. In early 1988, Mr. Zaccaria, the president of Mr. Papcsy's employer, approached him to invest in a company refinancing. The proposal was for Mr. Papcsy to borrow $50,000 from the company pension plan and use $20,000 of the proceeds to pay off a previous $20,000 note assigned by the company to the pension plan and invest the balance of $30,000 in the subordinated notes of the company. Mr. Papcsy thought the idea was good; his wife did not. She was reluctant to mortgage her home for a loan, the major proceeds of which was loaned to the company. Reluctant or not, she did sign a note and mortgage deed dated and acknowledged February 1, 1988. As previously stated in this memorandum, that would have been impossible because neither document was even in CT Page 8772 existence on that date and, in fact, the lawyers had yet to speak on the subject. It is just another example of the cavalier way in which the attorneys handled the paperwork. The court has no idea when these documents were actually executed, but it must have been prior to March 18, 1988, because on that date Attorney Lyons wrote to Attorney Tomback telling him that the mortgage papers were executed. (Plaintiff's exhibit ii.)
Quite obviously funds were not available to close this loan and nothing seems to have happened until the Pension Plan on September 29, 1988 did issue a check for $50,000 to the defendants. During this time, it would appear from the exhibits that Attorney Tomback was holding the original note ostensibly executed on February 1, 1988 and Attorney Lyons was holding the mortgage deed of the same date. No explanation was offered for the delay by the plaintiffs and obviously no consideration had been made on the February 1, 1988 note. There is no evidence to support that the defendants believed the original note was still valid and enforceable.
Be that as it may, funds were advanced by the Pension Plan to the defendants on September 29, 1988. Attorney Tomback, by his own admission, had the original note dated February 1, 1988. He apparently was concerned whether that note, now almost eight months old, would support the $50,000 payment by the Trust. So what did he do? Instead of having a new note and mortgage deed prepared, he simply took the original note, whited out all reference to February 1, 1988 and substituted October 1, 1988, not only on the face of the note, but also on the acknowledgement by the notary of the original note, which now supported the fact that both defendants acknowledged this note to be their free act and deed as of October 1, 1988 when nothing could be further from the truth. The defendants only signed one note some time in early 1988. Despite the claims to the contrary in the plaintiff's brief, Attorney Tomback did this without any consent from Elizabeth Papcsy or any notice to her at all. He claims he did this on or about October 1, 1988, with Mr. Papcsy present but there is no evidence that Mr. Papcsy was made aware of the change or consented to it. With the reluctance Mrs. Papcsy expressed in February of 1988, there is no telling whether she would have signed a new note and mortgage deed in October of 1988, and Attorney Tomback was not going to take that chance.
Now, apparently, Attorney Tomback realized that he had a note dated October 1, 1988, and a mortgage deed dated February 1, CT Page 8773 1988, referring to a now non-existent note. What did he do? He simply asked Attorney Lyons to change the deed and record. Something must have awakened Attorney Lyons because he did neither. On this sorry state of facts, the plaintiff, who is not even the mortgagee of the subject note, is seeking to foreclose the home of Mrs. Papcsy.
Connecticut General Statutes § 42a-3-407 (a) defines an alteration as "an unauthorized change in an instrument that purports to modify in any respect the obligation of a party." Under subsection (b) it states that if that alteration is fraudulently made it will discharge a party whose obligation is affected unless that party gives assent.
The court finds that the note here was altered without the consent of Mrs. Papcsy, and after eight months from the time she reluctantly signed the note dated February 1, 1988, there is no proof that she would have ever signed a new note or mortgage on or about October 1, 1988. The fact that she endorsed the check plaintiff's exhibit B) is proof of nothing more than that. Further, the note described in the mortgage deed does not exist. The note in question is now dated and acknowledged on October 1, 1988, when the mortgage deed is dated and acknowledged February 1, 1988. It could hardly be argued seriously that a mortgage deed dated and acknowledged on February 1, 1988, was executed to secure a note that was not executed until eight months later on October 1, 1988.
On these facts alone, judgment will enter for the defendant Elizabeth Papcsy as to all claims on the first count.
The plaintiff's case has even a greater problem, however, that was not addressed at the trial or addressed in the post trial briefs. It is clear from the record that there was only one note signed and acknowledged by the defendants and that purportedly took place on February 1, 1988. (See mortgage note dated February 1, 1988 included in plaintiff's exhibit LL.) It is undisputed that Attorney Tomback, on behalf of the plaintiff, on October 1, 1988, took that original note dated February 1, 1988, and changed all the dates on the note including the notary acknowledgment to October 1, 1988. A copy of that note is plaintiff's exhibit A and the original of that note, which plaintiff's counsel produced after the court's questioning of Attorney Tomback, is marked as plaintiff's exhibit A-1. On the last page of that note, the top paragraph reads:"This Mortgage CT Page 8774 Note may not be modified except by written instrument executed by the party to be charged therewith in the same manner as this Mortgage Note has been executed."
By its own language, the note of February 1, 1988, could only be modified by a new note executed in the same manner as the February 1, 1988, note and that would involve a notarization. We all know that a new note was not prepared, but Attorney Tomback, by his own admission, changed the date on the February 1, 1988 note to October 1, 1988. That modification by Attorney Tomback renders the October 1, 1988, note unenforceable by its own terms. The parties to be charged simply did not execute a new written instrument.
Judgment will enter for the defendants on Count One. The court has previously denied the plaintiff's post trial effort to amend the complaint further to add a count for unjust enrichment. To the extent that may seem harsh to the interests of the named mortgagee, Remodeling Consultants, Inc., Money Purchase Pension Plan and Trust, there are pending malpractice cases in this jurisdiction and elsewhere that could at least potentially provide a source of remedy for that entity.
GORMLEY, J.